A91A1601. THOMPSON v. HARDY
CHEVROLET-PONTIAC-BUICK, INC.
A92A0259. FALLS et al. v. THOMPSON et al.
(417 SE2d 358)

McMURRAY, Presiding Judge.

Christopher K. Thompson, by next friend Faye K. Thompson, and Harold Thompson and Faye K. Thompson, individually, brought an action against Gregory N. Falls, Cholie Falls and Hardy Chevrolet-Pontiac-Buick, Inc. ("Hardy Chevrolet"), alleging that Hardy Chevrolet sold Cholie Falls a used car with defective brakes and that the defective brakes and negligent operation of the vehicle by defendant Cholie Falls' son, Gregory N. Falls, resulted in a collision, seriously injuring 11-year-old Christopher K. Thompson. Hardy Chevrolet and the Fallses filed separate answers, denying material allegations of the complaint. Cholie Falls filed a cross-claim against Hardy Chevrolet for "contribution and/or indemnification." The evidence adduced at a jury trial revealed the following:

On August 1, 1987, Cholie Falls and her 16-year-old son, Gregory N. Falls, went to Hardy Chevrolet's automobile dealership and Gregory N. Falls test drove a previously owned 1984 Mercury Cougar automobile. Ms. Falls asked Don Hannah, a Hardy Chevrolet used car salesman, "if [she] could take [the Mercury to an independent mechanic for inspection] and he said, no problem . . . we have nothing to hide." Mr. Hannah also said, "I don't feel it necessary, but if you want to take it, you're welcomed to take it." Mr. Hannah explained, "if there's a problem[, it] will automatically be fixed . . ., we're not going to jeopardize [the] reputation of Hardy Family's Chevrolet by letting a car get out with bad brakes or anything else bad." Mr. Hannah told Ms. Falls "that the brakes would automatically be checked out."

On August 3, 1987, Ms. Falls' mechanic, Shahrooz Shawn Ataei, did "a visual inspection" of the Mercury and he determined that the tires "were in bad condition [and that] the front bearings [were] noisy." Mr. Ataei mentioned the brakes, but Ms. Falls "told him not to take the wheels off [for an inspection of the brakes], that Hardy Chevrolet would be doing that."

Ms. Falls returned the car to Hardy Chevrolet and gave Mr. Hannah a list of needed repairs, including a request for an inspection of the brake system. Mr. Hannah informed Ms. Falls that Hardy Chevrolet was responsible for "the brakes [and] transmission," but that some of the repairs would have to be paid "out of his commis-

sion. . . ." Ms. Falls also talked to Johnny Hardy, a corporate officer of Hardy Chevrolet, and Mr. Hardy "assured [Ms. Falls] that the car was in good shape and that . . . they would make sure the vehicle was in good shape." Mr. Hardy informed Ms. Falls "that if it wasn't a good vehicle to begin with that he would [sic] have it on the auction lot."

Ms. Falls expressed reservations to Mr. Hannah about purchasing a used car because of repair costs in the near future. Mr. Hannah then "introduced a warranty [for $550] that would give [Ms. Falls] peace of mind knowing that if anything major happened that it would . . . not only [be] covered but paid for." Mr. Hannah "said, . . . this $550, it does not mean anything . . . now, true, I'm going to get a commission off of this car if you buy it, but this warranty, I do not get anything from it; neither does Hardy Chevrolet[, all] this money goes into the warranty." Ms. Falls decided to purchase the car and the warranty. However, Mr. Hannah informed Gregory N. Falls that the vehicle would not be ready for delivery until 5:00 p.m. on August 4, 1987, explaining that "we've got to give the mechanics time to do their job."

Ms. Falls and Gregory N. Falls returned to Hardy Chevrolet on August 4, 1987, and "Johnny Hardy assured [them] that all the mechanical work had been done. . . ." Ms. Falls then took delivery of the vehicle and, that evening, Gregory N. Falls drove the car on a long-distance trip to Florence, Mississippi.

On Friday evening, August 7, 1987, Gregory N. Falls returned home from Mississippi and informed his mother that there was "a sound coming from the back of [the] car." The next morning, Ms. Falls contacted Mr. Hannah and advised him of a sound ("scraping noise") coming from the back of the car. Mr. Hannah responded, "don't worry, mom, everything mechanically is fine; it's all been checked out; it's nothing major [and] to just not worry and [on] Monday morning when Greg [brings] the vehicle in . . . they [will] listen to it and check the vehicle out again."

On August 8, 1987, Gregory N. Falls drove the car into a curve on a rain slick highway. He applied the brakes and lost control of the vehicle. The car went off the road and collided into an embankment. Eleven-year-old Christopher Thompson was a passenger in the car. He suffered serious injuries.

After the collision, Mr. Ataei inspected the wrecked vehicle's braking system and determined that the brakes had not been inspected since the car had "left the assembly line." (Mr. Ataei testified that a temporary pin used to hold the brake drums in place during manufacture of the vehicle remained in place, indicating that the brake drums had not been removed after assembly. He testified that the brake drums must be removed for proper inspection of the brake

system.) Mr. Ataei also discovered that the rear brakes were in poor condition and that part of the rear braking system was so worn that it did not "have any brake . . . effect on [the] wheel." Two other mechanics inspected the wrecked vehicle and affirmed that the rear braking system was in very bad shape. In fact, Engineer Luther Offey Cox, Jr., discovered that some of the brake "rivets [had] already worn in and grooved the drum[, showing] that [the brake] lining is way beyond the safe use of this brake system and should have been replaced long before this incident occurred." Mr. Cox determined that the poor condition of the brakes may result in "a grabbing effect" and that wet weather conditions would result in "unpredictable . . . braking [performance], especially between the left and right rear sides of the automobile." He concluded that "these brakes would definitely enter into a possible loss of control of the vehicle as it came into that curve and the brakes were applied."

At the conclusion of the Thompsons' evidence, the trial court granted a directed verdict against the Thompsons on their claim against Hardy Chevrolet for fraudulent concealment and misrepresentation of fact. The jury subsequently returned a verdict for Harold Thompson and Faye K. Thompson in the amount of $30,000 on their claims against Cholie Falls and Gregory N. Falls. The jury returned a verdict for Christopher K. Thompson, by next friend Faye K. Thompson, in the amount of $47,500 on his claims against Cholie Falls and Gregory N. Falls. The jury returned a verdict in favor of Hardy Chevrolet on Cholie Falls' cross-claim for "contribution and/or indemnification."

Christopher K. Thompson, by next friend Faye K. Thompson, appealed in Case No. A91A1601. Gregory N. Falls and Cholie Falls filed an appeal in Case No. A92A0259 after the denial of their joint motion for judgment notwithstanding the verdict or for new trial. *Held*:

### Case No. A91A1601

1. Christopher Thompson, by next friend Faye K. Thompson, contends the trial court erred in directing a verdict in favor of Hardy Chevrolet.

The Thompsons contend in the pre-trial order that Hardy Chevrolet "was guilty of perpetrating a fraud upon Cholie Falls in the sale of the vehicle or made fraudulent misrepresentation as to the condition of the automobile. . . ." It is from this claim that the trial court granted Hardy Chevrolet's motion for directed verdict, holding that the Thompsons' claim against Hardy Chevrolet "is all predicated on knowledge, and there's no evidence at all of any knowledge on the part of Hardy that there was a problem with the brakes." This find-

ing ignores the Thompsons' claim that Hardy Chevrolet negligently informed Cholie Falls that the brakes on the vehicle she purchased had been inspected and were in good working order.

The Thompsons stipulated in the pre-trial order that their action against Hardy Chevrolet was based in fraud and on breach of an implied warranty of merchantability. However, under a heading in the pre-trial order designated, "Specifications of negligence . . .," the Thompsons contend, in pertinent part, that Hardy Chevrolet was negligent "[i]n selling the Mercury automobile without examining the brakes knowing said automobile was to be driven by a youthful driver; . . . [i]n wilfully and fraudulently representing to the Defendant Cholie Falls that the vehicle was in good mechanical condition and safe to drive when the brakes were in fact defective and dangerous, an act which [Hardy Chevrolet] knew might endanger the life and safety of Cholie Falls but also other members of the public including [the Thompsons]; . . . [i]n negligently delivering said vehicle with defective brakes thereby endangering [the Thompsons] and others, an act which [Hardy Chevrolet] knew might endanger the life and safety of Cholie Falls but also other members of the public including [the Thompsons; i]n wilfully or negligently misleading Cholie Falls by telling her on August 8, 1987, that the scraping noise was nothing to worry about because everything had been done to the car, an act which [Hardy Chevrolet] knew might endanger the life and safety of Cholie Falls but also members of the public including [the Thompsons]."[1]

Section 311 of the Restatement of the Law, Second, Torts, provides as follows: "(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results (a) to the other, or (b) to such third persons as the actor should expect to be put in peril by the action taken. (2) Such negligence may consist of failure to exercise reasonable care (a) in ascertaining the accuracy of the information, or (b) in the manner in which it is communicated." In the case sub judice, there is sufficient evidence to support a claim that Hardy Chevrolet negligently misrepresented facts involving risk of physical harm to others.

Ms. Falls testified that she relied on Hardy Chevrolet's representations that the brakes on her used car had been inspected and were in good condition. This evidence and testimony that the brakes had

---

[1] The Thompsons note in the pre-trial order that they "do not contend that they have a right of action against Hardy for fraud or breach of warranty, what [we] contend is that while Hardy was defrauding its customer in regard to safety of the vehicle and breaching its warranty in regard to safety of the vehicle it knew such conduct might cause injury to others which conduct was wilful and negligent and constitutes a tort against [the Thompsons]."

not been inspected since the vehicle's manufacture and evidence that the car's poor braking condition contributed to the collision raise genuine issues of material fact as to Hardy Chevrolet's liability for negligent misrepresentation involving risk of physical harm to others. See *Chitty v. Horne-Wilson, Inc.*, 92 Ga. App. 716, 719 (2) (89 SE2d 816). Consequently, the trial court erred in granting Hardy Chevrolet's motion for directed verdict in Case No. A91A1601. This case must be reversed and remanded for a new trial on Christopher Thompson's, by next friend Faye K. Thompson, claim against Hardy Chevrolet.

2. Christopher Thompson, by next friend Faye K. Thompson, contends the trial court "erred in refusing to permit [his attorney] to cross-examine [Hardy Chevrolet's] agent in regard to the profit of Hardy [Chevrolet] and its salesman from the sale of the warranty." We agree.

"Any evidence is relevant which logically tends to prove or to disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant. *Allen v. State*, 137 Ga. App. 755, 756 (244 SE2d 834). Moreover, where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury. *Lovejoy v. Tidwell*, 212 Ga. 750, 751 (95 SE2d 784); *Cravey v. J. S. Gainer Pulpwood Co.*, 128 Ga. App. 465 (4) (197 SE2d 171)." *Kelly v. Floor Bazaar*, 153 Ga. App. 163, 165 (264 SE2d 697).

In the case sub judice, the Thompsons allege that Hardy Chevrolet misrepresented material facts regarding the condition and an inspection of a used automobile. Consequently, evidence challenging the validity of a Hardy Chevrolet used car salesman's representation that neither he nor Hardy Chevrolet "get anything from [the warranty and that all] this money goes into the warranty" is relevant as it tends to show a scheme of fraudulent conduct aimed at inducing Ms. Falls to purchase a Hardy Chevrolet used car. Such evidence may also be relevant for impeachment purposes.

### Case No. A92A0259

3. The Fallses contend there was no evidence to authorize a finding that Gregory N. Falls caused the collision. This contention is without merit.

"On appeal an appellate court is bound to construe the evidence in support of the verdict and judgment, and if there is some evidence to support the verdict we will uphold the judgment. [Cit.]" *Locke v. Vonalt*, 189 Ga. App. 783, 785 (1) (377 SE2d 696). The manner and speed at which an automobile is being operated may be established by circumstantial evidence. *Shockey v. Baker*, 212 Ga. 106, 108 (4), 110 (90 SE2d 654). In the case sub judice, Gregory N. Falls testified that

he lost control of his mother's vehicle while attempting to negotiate a curve on a rain slick road. Photographs of the collision scene reveal that the vehicle crashed through a highway guard rail and careened into a ditch, causing extensive damage to the guard rail and the automobile. The photographs also indicate that the vehicle traveled a substantial distance after flipping over the guard rail. This evidence was sufficient to authorize a finding that Gregory N. Falls drove his mother's vehicle at a speed greater than was reasonable and prudent under conditions existing at the time of the collision. See OCGA § 40-6-180. Consequently, the trial court did not err in failing to grant a new trial on the Thompsons' claims against the Fallses. See OCGA §§ 5-5-20 and 5-5-21.

4. In their second enumeration, the Fallses contend the verdict is contrary to law and argue that "[t]he jury erred in its verdict as to the allowance of damages to Mr. and Mrs. Thompson, as the jurors considered Mr. and Mrs. Thompson's pain and suffering and emotional trauma as an element of damages."

There is no reference to the transcript supporting the allegation that the jury considered "pain and suffering and emotional trauma as an element of damages." Consequently, this enumeration will not be considered. *Llano v. DeKalb County*, 174 Ga. App. 693 (2) (331 SE2d 36).

5. Next, the Fallses contend the trial court erred in failing to give their requested charge on sudden emergency.

"[A]n instruction [on sudden emergency] is authorized where there is evidence that a party 'was required to make quick judgments on the immediate action to be taken without having time for mature reflection.' *Reece v. Callahan*, 164 Ga. App. 131, 132 (296 SE2d 425) (1982)." *Martini v. Nixon*, 185 Ga. App. 328, 329 (3) (364 SE2d 49) (1987). In the case sub judice, Gregory N. Falls did not testify that brake failure impaired his ability to react to a suddenly dangerous road condition. He testified that he lost control of his mother's vehicle after applying the brakes while traveling through a curve on a rain slick road. These circumstances may authorize a charge on accident, i.e., that the collision was not caused by Gregory N. Falls' negligent acts or omissions, but they do not authorize a charge on sudden emergency.

6. In support of their fourth enumeration, the Fallses argue "[t]he jury's verdict was not arrived at independently but rather was based upon the submission of each juror of a certain figure or award, then these figures were summed up and then divided by six (6)." There is no reference to the transcript in support of this allegation. Consequently, "this enumeration of error will not be considered. See Rule 15 (c) (3) of this court." *Llano v. DeKalb County*, 174 Ga. App. 693 (2), 694, supra.

7. The Fallses contend "[t]he trial Court erred in not giving the jury written instructions when requested by the jury."

There is no citation of authority or argument supporting this enumeration. Instead, an argument is submitted which improperly raises a contention not included in the enumerated error. *Pope v. Triange Chem. Co.*, 157 Ga. App. 386 (1) (277 SE2d 758). "Accordingly, this enumeration of error is deemed to have been abandoned pursuant to Rule 15 (c) (2) of this court." *Whatley v. State*, 197 Ga. App. 489 (2) (398 SE2d 807).

8. In their sixth enumeration, the Fallses contend the trial court erred in refusing to permit deposition testimony of David M. Cowen.

There is no reference to the transcript showing exclusion of David M. Cowen's deposition testimony. "In the absence of such references to the transcript, this enumeration of error will not be considered. See Rule 15 (c) (3) of this court." *Llano v. DeKalb County*, 174 Ga. App. 693 (2), 694, supra.

9. The Fallses consolidate their seventh and eighth enumerations, contending the trial court erred in granting Hardy Chevrolet's motion in limine excluding "testimony concerning the oral contract and warranties for the inspection and repair of the brakes of the Fallses' vehicle. . . ."

The trial transcript reveals a favorable ruling on Hardy Chevrolet's pre-trial motion to exclude parol evidence which contradicts or varies the terms of disclaimer provisions of a sales agreement between Hardy Chevrolet and Ms. Falls. However, the Fallses' brief does not make reference to an offer of proof regarding specific evidence excluded by the trial court. This omission makes guess-work of appellate review. See *Rosequist v. Pratt*, 201 Ga. App. 45 (1) (n. 1) (410 SE2d 316). Nonetheless, we address this enumeration based on Hardy Chevrolet's request to exclude all testimony regarding "the salesman's representations that the brakes were in perfect condition. . . ."

"In order for an error to be grounds for reversal, the defendant must show error and ensuing harm. *Burnette v. State*, 165 Ga. App. 768 (302 SE2d 621)." *Robinson v. State*, 176 Ga. App. 18 (335 SE2d 303). In the case sub judice, Ms. Falls testified that Johnny Hardy and Mr. Hannah assured her that the vehicle she was purchasing was in good condition and that the vehicle's brakes were in good working order. This evidence was admitted in apparent contradiction of the trial court's pre-trial ruling on Hardy Chevrolet's motion in limine. Under these circumstances, we find no harmful error in the trial court's grant of Hardy Chevrolet's motion in limine.

10. In their ninth enumeration, the Fallses contend "[t]he trial court erred in excluding testimony concerning oral contract and warranties for inspection and repair of brakes of the Fall's [sic] vehicle."

There is no reference to the transcript in support of this enumer-

ation. Consequently, it "will not be considered. See Rule 15 (c) (3) of this court." *Llano v. DeKalb County*, 174 Ga. App. 693 (2), 694, supra.

11. The Fallses contend the trial court erred in allowing Officer Randall Mark Krueger of the Cobb County Police Department testify and give an opinion as to the cause of the collision. The Fallses argue that they were unfairly surprised by Officer Krueger's testimony because he was not listed as an expert witness in the pre-trial order. The contention is without merit.

Although Officer Krueger was not listed as an expert witness in the pre-trial, he was listed as a potential witness for Hardy Chevrolet. Further, the Fallses were given an opportunity to interview Officer Krueger before the officer gave his opinion as to the cause of the collision. Under these circumstances, we cannot say that the Fallses were unfairly surprised when Officer Krueger gave an opinion as to the cause of the collision. See *Myers v. State*, 184 Ga. App. 618, 621 (6) (362 SE2d 92).

*Judgment reversed in Case No. A91A1601. Judgment affirmed in Case No. A92A0259. Sognier, C. J., and Andrews, J., concur specially.*

SOGNIER, Chief Judge, concurring specially.

I concur with the conclusion of the majority in Case No. A91A1601 but not for the reasons set forth by the majority. I find the case presented by the Thompsons stated a claim for negligent inspection and repair, not fraudulent or negligent misrepresentation.

The Thompsons' original complaint alleged claims of fraud, negligence, and breach of warranty against Hardy Chevrolet. The trial court subsequently granted partial summary judgment to Hardy Chevrolet on the fraud claim because Hardy Chevrolet made no representations to the Thompsons on which they could have relied and on the breach of warranty claim because of a lack of privity. Thus, at trial the only claim remaining against Hardy Chevrolet was the Thompsons' allegation that Hardy Chevrolet negligently failed to inspect the brakes and negligently failed to discover the defect before delivering the car to the Fallses.

Although as a general rule no privity is required to support a tort action, OCGA § 51-1-11 (a), "if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract." Id.; see *Sims v. American Cas. Co.*, 131 Ga. App. 461, 479-481 (5) (206 SE2d 121) (1974). Since the Thompsons' claim arose from the contract between Hardy Chevrolet and the Fallses, they are entitled to recover only if they can establish

the violation of a duty independent of the contract. Such an independent duty may arise at common law "because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm. [Cit.]" *Sims*, supra at 480.

Our courts have recognized that automobile dealers who are not manufacturers have no obligation to test vehicles they purchase for resale for the purpose of discovering latent or concealed defects. *Holman Motor Co. v. Evans*, 169 Ga. App. 610, 613-614 (2) (c) (314 SE2d 453) (1984). However, if a dealer does undertake to inspect or test its merchandise, it must do so nonnegligently, and it will " 'be liable for any patent defect which the inspection(s) might reveal and could be negligent for not discovering such defects as might reasonably have been unearthed.' [Cits.]" Id. at 614. Likewise, when a dealer undertakes to repair a vehicle it sells, the dealer " 'owes an original duty to the public to use ordinary care in making repairs so as not to endanger the person or property of others by his negligent performance, when the consequences of such conduct may be foreseen.' " *General Motors Corp. v. Jenkins*, 114 Ga. App. 873, 879 (152 SE2d 796) (1966). Both *Holman* and *GMC v. Jenkins* extended liability of car dealers for negligent inspection or repairs to third party passengers injured in collisions resulting from defects in vehicles sold by the dealers.

At trial, evidence was adduced that Hardy Chevrolet claimed to have inspected the car and made all necessary repairs, and specifically that Hardy Chevrolet claimed to have inspected the brakes and found them to be in good condition. The Thompsons also presented evidence that the brakes were defective, that they had not been inspected, and that an inspection would have uncovered the defect. Additionally, the jury would have been authorized to conclude that the injuries Christopher Thompson suffered were a foreseeable result of the brake failure. The Thompsons thus set forth a negligence claim sufficient to be presented to the jury, see *Holman*, supra; *J. C. Lewis Motor Co. v. Simmons*, 128 Ga. App. 113 (195 SE2d 781) (1973), and accordingly the direction of a verdict for Hardy Chevrolet was error.

ANDREWS, Judge, concurring specially.

In his special concurrence, Chief Judge Sognier correctly identifies ordinary negligence as the only theory of recovery upon which the Thompsons could have proceeded at trial — a theory never clearly articulated by the Thompsons below or in this court, and only barely sustained by a liberal construction of the pleadings. Negligence being the sole remaining basis for the Thompsons' claim against Hardy Chevrolet in Case No. A91A1601, I disagree with the majority's analysis in Division 2. What profit Hardy Chevrolet made on the sale of the warranty has no relevance to the negligence claim.

508

DECIDED MARCH 6, 1992 —
RECONSIDERATIONS DENIED MARCH 20, 1992 AND MARCH 24, 1992.

*Kyle Yancey,* for the Thompsons.
*Gray, Gilliland & Gold, David S. Currie,* for Hardy Chevrolet.
*Joe O'Connor,* for the Fallses.